# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| SHERRI LYNN J.[1], | Case No. 3:18-cv-00724-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **NANCY A. BERRYHILL,** Deputy Commissioner for Operations, performing the duties and functions not reserved to the Commissioner of Social Security, | |
| Defendant. | |

Merrill Schneider, SCHNEIDER KERR & ROBICHAUX, P.O. Box 14490, Portland, Oregon 97293. Of Attorneys for Plaintiff.

Billy J. Williams, United States Attorney, and Renata Gowie, Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204; Sarah L. Martin, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

Plaintiff Sherri Lynn J. ("Plaintiff") seeks judicial review of the final decision by the Social Security Commissioner ("Commissioner") denying Plaintiff's application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. This Court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g). For the reasons discussed below, the Commissioner's decision is reversed and remanded.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the

Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## BACKGROUND

### A. Plaintiff's Application

Plaintiff was born in 1973. AR 43. On January 31, 2014, Plaintiff protectively filed applications for DIB and SSI, alleging an onset date of November 7, 2013 and a date last insured of December 31, 2014. AR 15, 17. Plaintiff's applications were denied initially and upon reconsideration and Plaintiff requested a hearing before an administrative law judge ("ALJ"). A hearing before an ALJ was held on September 20, 2016 in Portland, Oregon, where Plaintiff testified and was represented by counsel. AR 33-43. On October 26, 2016, the ALJ issued a written decision denying Plaintiff's applications. AR 12. The Appeals Council denied review on February 21, 2018, making the ALJ's decision final. AR 1. Plaintiff seeks judicial review of that decision.

### B. The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1.    Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2.    Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.    Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.    Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.    Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## C. The ALJ's Decision

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since November 7, 2013, the alleged onset date. AR 17. At step two, the ALJ determined that the Plaintiff suffered from the following severe impairments: cervical spondylosis status post microdiscectomies; cervical spinal stenosis; lumbar degenerative disc disease; bronchitis; major depressive disorder; posttraumatic stress disorder; and borderline intellectual functioning. AR 17. The ALJ also found that Plaintiff's bladder condition and eye condition were nonsevere. AR 18.

At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ considered Plaintiff's pain complaints and conditions under musculoskeletal listing subsection 1.04 and concluded that the record does not show severity that would meet the listing criteria. AR 18. The ALJ considered

Plaintiff's bronchitis and breathing difficulties under listings 3.02A and B. AR 18. The ALJ

determined that Plaintiff's pulmonary function testing results did not meet the measurement

criteria as defined in the applicable regulations. AR 18. Similarly, the ALJ determined that

Plaintiff's bronchitis did not meet a listing because the record does not show an FEV1 equal to or

less than the values specified in the regulations. AR 18.

      The ALJ determined that Plaintiff's mental impairments, considered singly and in

combination, did not meet or medically equal the criteria of listings 12.04, 12.05 and 12.06. The

ALJ evaluated whether Plaintiff's mental impairments resulted in marked restriction of activities

of daily living, marked difficulties in maintaining social functioning, marked difficulties in

maintaining concentration, persistence, or pace, or repeated episodes of decompensation. The

ALJ found that Plaintiff had a mild restriction in activities of daily living, moderate difficulties in

social functioning, moderate difficulties in concentration, persistence, or pace, and no periods of

decompensation. The ALJ determined that Plaintiff did not meet the limitations identified in the

Paragraph B or Paragraph D criteria of listing 12.05 or the Paragraph C criteria of listing 12.04

or 12.06. Turning back to listing 12.05, the ALJ determined that the Paragraph C criteria of

listing 12.05 are not met "because the Plaintiff does not have a valid verbal, performance, or full

scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and

significant work-related limitation of function." AR 20. The ALJ stated that Plaintiff "also does

not meet listing 12.05 because she cannot establish intellectual functioning was compromised

prior to age 22." AR 20.

      The ALJ next addressed Plaintiff's residual functional capacity ("RFC"). The ALJ

determined that Plaintiff had the residual functional capacity to perform light work except:

> She can stand and walk 4 hours total in an 8 hour workday; she can
> occasionally climb ramps and stairs; and she should not climb

ladders, ropes and scaffolds. She can occasionally balance, stoop, kneel, crouch and crawl. The claimant can occasionally reach overhead (OH) bilaterally; she can frequently handle with the right upper extremity (RUE); and she can frequently finger with the left upper extremity (LUE). The claimant should avoid concentrated exposure to pulmonary irritants such as fumes, odors, dusts, gases and poor ventilation. She can understand and remember simple instructions; she has sufficient concentration, persistence and pace (CPP) to complete simple, routine tasks for a normal workday and work week with normal breaks. She can work at a regular, but not fast, production pace. She should not be required to perform math or writing as a work function. The claimant can have occasional, brief superficial interactions with coworkers and the general public. She is able to accept supervision. Reasoning levels should be no more than 2.

AR 21.

At step four, the ALJ determined that Plaintiff is unable to perform her past relevant work as a caregiver. AR 25. At step five, the ALJ found that Plaintiff was capable of performing jobs that exist in significant numbers within the national economy, including production assembler, electronics worker, and hand packager. AR 25. Therefore, the ALJ concluded that the Plaintiff was not disabled. AR 26.

## DISCUSSION

In Plaintiff's opening brief, she asserts that the ALJ committed five errors: (1) the ALJ improperly failed to find that Plaintiff's impairments meet or equal a listing at step three; (2) the ALJ improperly rejected the opinions of Plaintiff's medical sources; (3) the ALJ improperly evaluated lay witness statements; (4) the ALJ incorrectly conducted a credibility evaluation; and (5) the ALJ erred in failing to conduct an adequate analysis at step five. In her reply brief, Plaintiff adds that the ALJ improperly rejected Plaintiff's asserted severe impairments at step two.

### 1. The ALJ's Step Three Analysis

At step three, the ALJ considers the medical severity of Plaintiff's impairments to determine whether a plaintiff has an impairment that meets or equals one of the impairments listed in the governing regulations. 20 C.F.R. § 416.920(a)(4)(iii). If the plaintiff has an impairment that meets the listing criteria, the plaintiff is presumptively disabled. The burden of proof is on the plaintiff to establish that her impairments meet or equal one of the listing criteria. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). Listing 12.05 addresses "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22." Listing 12.05, 20 C.F.R. Pt. 404, Subpt. P, App1. "A claimant satisfies Listing 12.05C, demonstrating 'intellectual disability' and ending the five-step inquiry, if he can show: (1) subaverage intellectual functioning with deficits in adaptive functioning initially manifested before age 22; (2) a valid IQ score of 60 to 70; and (3) a physical or other mental impairment imposing an additional and significant work-related limitation." *Kennedy v. Colvin*, 738 F.3d 1172, 1174 (9th Cir. 2013).

The ALJ determined that "the 'paragraph C' criteria of listing 12.05 are not met because "the claimant does not have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function. The claimant also does not meet listing 12.05 (Borderline Intellectual Functioning) because she cannot establish intellectual functioning was compromised prior to age 22." AR 20. The ALJ erred when stating that Plaintiff did not have a full scale IQ of 60 through 70, and several pages later in the ALJ's written decision, the ALJ recognized that "her actual full scale IQ score was 70." AR 24.

The Commissioner concedes that Plaintiff meets the second and third requirements of the three-part test to meet the 12.05C listing criteria, but argues that Plaintiff has not met her burden of proof to establish the first requirement. ECF 15 at 3. "A claimant may use circumstantial evidence to demonstrate adaptive functioning deficits such as 'attendance in special education classes, dropping out of high school prior to graduation, difficulties in reading, writing, or math, and low skilled work history." *Pedro v. Astrue*, 849 F. Supp. 2d 1006, 1011-12 (D. Or. 2011); *see also Williams v. Berrihill*, 2017 WL 1174061, at *5 (E.D. Cal. March 29, 2011) (collecting cases discussing circumstantial evidence of adaptive functioning).

The Commissioner argues that Plaintiff did not establish evidence that she has deficits in adaptive functioning that initially manifested before age 22. The Commissioner argues that such deficits must be significant. Although Plaintiff attended special education classes for fifth through eighth grades, she attended mainstream classes in ninth and tenth grades before dropping out of high school. Plaintiff wanted to return to school and did not, not because of her intellectual functioning, but because she was caring for her baby. As an adult, Plaintiff was able to work as a caregiver, cleaning bathrooms and other tasks. All of these things, the Commissioner argues, are evidence that demonstrates that Plaintiff did not have deficits in adaptive functioning that manifested before age 22. Plaintiff counters that her attendance in special education classes and her failure to complete high school weigh in favor of finding that deficits in adaptive functioning manifested before age 22. Plaintiff also points to the ALJ's restriction in the RFC that Plaintiff should not be required to perform math or writing as a work function as evidence that the ALJ understood her to have difficulties in reading, writing, and math.

The ALJ failed to address in any meaningful detail whether Plaintiff had any deficits in adaptive functioning before age 22. Although the ALJ stated in a single conclusory sentence that

Plaintiff "cannot establish intellectual functioning was compromised prior to age 22," the ALJ did not explain why the ALJ reached that conclusion. Furthermore, the ALJ's reasoning on the 12.05C criteria is suspect given that in the previous sentence the ALJ erred by stating that Plaintiff did not have an IQ of 60 through 70. There is evidence in the record that Plaintiff attended special education classes, dropped out of high school before graduation, and had low semiskilled work history. There is also evidence in the record that Plaintiff is not significantly limited in her activities of daily living, is able to drive, go grocery shopping, cook meals, perform self-care, and care for her husband and children. Because the ALJ failed to address whether Plaintiff had difficulties in adaptive functioning before age 22, and inaccurately stated that Plaintiff did not have an IQ in the range of 60-70, the Court cannot conclude that the decision is free of legal error and supported by substantial evidence. "An ALJ's decision must be reviewed based on the reasoning and factual findings offered by the ALJ and not '*post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking.'" *Williams*, 2017 WL 1174061, at * 6. Therefore, on remand, the ALJ must address whether Plaintiff meets the three requirements necessary to establish the 12.05C listing criteria. *See Kennedy*, 738 F.3d at 1174.

Plaintiff also asserts that the ALJ erred in not finding that she meets or equals listing 1.04A. Listing 1.04A requires a spinal disorder resulting in nerve root compromise with limitation of motion of the spine, motor loss, and sensory or reflex loss. The ALJ found that the record does not show the severity that would meet listing 1.04. AR 18. Plaintiff's medical records do not demonstrate that she had muscle weakness, sensory loss, or loss of reflexes, as would be required to meet listing 1.04A. AR 18. Accordingly, the ALJ did not err in finding that Plaintiff did not meet listing 1.04A.

## 2. Medical Source Opinions

The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. *Carmickle*, 533 F.3d at 1164. The Ninth Circuit distinguishes between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). Generally, "a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001). If a treating physician's opinion is supported by medically acceptable techniques and is not inconsistent with other substantial evidence in the record, the treating physician's opinion is given controlling weight. *Id.*; *see also* 20 C.F.R. § 404.1527(d)(2). A treating doctor's opinion that is not contradicted by the opinion of another physician can be rejected only for "clear and convincing" reasons. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). If a treating doctor's opinion is contradicted by the opinion of another physician, the ALJ must provide "specific and legitimate reasons" for discrediting the treating doctor's opinion. *Id.*

In addition, the ALJ generally must accord greater weight to the opinion of an examining physician than that of a non-examining physician. *Orn*, 495 F.3d at 631. As is the case with the opinion of a treating physician, the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990). If the opinion of an examining physician is contradicted by another physician's opinion, the ALJ must provide "specific, legitimate reasons" for discrediting the examining physician's opinion. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). An ALJ may reject an examining, non-treating physician's opinion "in favor of a nonexamining, nontreating physician when he gives specific, legitimate reasons for doing so, and those reasons are

supported by substantial record evidence." *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995), *as amended* (Oct. 23, 1995).

Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with medical records, inconsistency with a claimant's testimony, inconsistency with a claimant's daily activities, or that the opinion is brief, conclusory, and inadequately supported by clinical findings. *Bray*, 554 F.3d at 1228; *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008); *Andrews*, 53 F.3d at 1042-43. An ALJ errs by rejecting or assigning minimal weight to a medical opinion "while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis" for the ALJ's conclusion. *Garrison¸* 759 F.3d at 1013; *see also Smolen*, 80 F.3d at 1286 (noting that an ALJ effectively rejects an opinion when he or she ignores it).

"An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Garrison*, 759 F.3d at 1012 (quoting *Reddick*, 157 F.3d at 725). In other words, "[t]he ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick*, 157 F.3d at 725 (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). "[T]he opinion of a non-examining medical advisor cannot by itself constitute substantial evidence that justifies the rejection of the opinion of an examining or treating physician." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (citations omitted); *but see id.* at 600 (opinions of non-treating or nonexamining physicians may serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record).

Plaintiff argues that the ALJ improperly discounted the medical opinion of Dr. Oelheim, PhD. Dr. Oelheim opined that Plaintiff, due to her low IQ and borderline intellectual functioning, would face "very severe barriers when in educational and training environments, and also when on the job," AR 589. Dr. Oelheim also recommended that Plaintiff "may need a job coach or trainer to help her learn her job duties. She may also need assistance completing paperwork such as resumes, letters of application and job applications." AR 591. Plaintiff argues that, although the ALJ stated that Dr. Oelheim's opinion was entitled to some weight, the ALJ actually disregarded Dr. Oelheim's recommendations because the ALJ did not include in Plaintiff's RFC the need for a job coach/trainer and mentor.

The ALJ did give weight to Dr. Oelheim's opinion and based on Dr. Oelheim's opinion included in the RFC Plaintiff's limitations to reasoning levels no greater than 2 and no requirement to perform math or writing as a work function. Although Dr. Oelheim opined that Plaintiff might need a job coach or trainer to help her learn her job duties, Dr. Oelheim never suggested, as Plaintiff argues, that Plaintiff would need a job coach on the job permanently. Additionally, Dr. Oelheim's opinion that Plaintiff would need assistance completing paperwork such as resumes and job applications suggests a need for help prior to finding and starting a new job, not on the job. Accordingly, the ALJ properly credited Dr. Oelheim's opinion and crafted an RFC consistent with that opinion. The ALJ did not err.

The ALJ gave significant weight to the state disability services medical consultants. Plaintiff argues that the ALJ nonetheless effectively rejected the state disability services medical consultants' opinions because the ALJ improperly attributed to them a finding that Plaintiff was limited to occasional reaching in any direction and overhead, whereas the medical consultants actually only limited Plaintiff to overhead bilateral reaching. But the ALJ's addition of an

additional limitation does not amount to an effective rejection of the medical consultants' opinions. Additionally, although the state disability services medical consultants limited Plaintiff to sedentary work, they also opined that Plaintiff could lift and/or carry 10 pounds frequently and 20 pounds occasionally, she could stand and/or walk for 4 hours, sit up to 6 hours in an 8 hour workday and was unlimited in climbing stairs and ramps. The ALJ accepted these limitations but not the ultimate conclusion that Plaintiff should be limited to sedentary, as opposed to light, work.

The description of light work in the regulations matches up much more closely with the state disability services consultants' limitations than the description of sedentary work. Although the state medical consultants stated that Plaintiff was limited to sedentary work, the limitations they described indicated that Plaintiff would be capable of performing light work. 20 C.F.R. § 404.1567(b) states "[l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities." 20 C.F.R. § 404.1567(b). The state medical consultants opined that Plaintiff could walk for 4 hours and lift 10 pounds frequently and 20 pounds occasionally. Thus, although the ALJ did not accept their ultimate conclusion that Plaintiff was limited to sedentary work, the ALJ did accept virtually all of the state disability consultants' findings on Plaintiff's functional limitations. The ALJ did not improperly reject the state disability consultants' opinions.

### 3. Lay Witness Statements

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006). Lay witness testimony regarding a claimant's symptoms or how an impairment affects her ability to work is competent evidence. *Id.* Thus, an ALJ may not reject such testimony without comment. *Id.* In rejecting lay testimony, the ALJ need not "discuss every witness's testimony on an individualized, witness-by-witness basis. Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012).

An ALJ errs by failing to "explain her reasons for disregarding . . . lay witness testimony, either individually or in the aggregate." *Id.* at 1115 (quoting *Nguyen*, 100 F.3d at 1467 (9th Cir. 1996)). This error may be harmless "where the testimony is similar to other testimony that the ALJ validly discounted, or where the testimony is contradicted by more reliable medical evidence that the ALJ credited." *See id.* at 1118-19. Additionally, "an ALJ's failure to comment upon lay witness testimony is harmless where 'the same evidence that the ALJ referred to in discrediting [the claimant's] claims also discredits [the lay witness's] claims.'" *Id.* at 1122 (quoting *Buckner v. Astrue*, 646 F.3d 549, 560 (8th Cir. 2011)). When an ALJ ignores *uncontradicted* lay witness testimony that is highly probative of a claimant's condition, "a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout*, 454 F.3d at 1056.

The ALJ reviewed the third party adult function report from Plaintiff's friend and neighbor Shannon E. The ALJ gave it less weight because Ms. E. only sees Plaintiff 6 hours per

PAGE 15 – OPINION AND ORDER

week and Ms. E. cited a diagnosis of arthritis as a cause of Plaintiff's limitations, but Plaintiff

has never had any arthritic testing or objective diagnosis of arthritis. AR 24. Additionally, the

ALJ found that Ms. E. reported that Plaintiff's needs for assistance were not supported by the

medical evidence in the record. Thus, the ALJ provided germane reasons for giving little weight

to the lay witness testimony.

### 4. Credibility Evaluation

There is a two-step process for evaluating a claimant's testimony about the severity and

limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

"First, the ALJ must determine whether the claimant has presented objective medical evidence of

an underlying impairment 'which could reasonably be expected to produce the pain or other

symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting

*Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant

need not show that her impairment could reasonably be expected to cause the severity of the

symptom she has alleged; she need only show that it could reasonably have caused some degree

of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the

ALJ can reject the claimant's testimony about the severity of her symptoms only by offering

specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting

*Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must

state which pain testimony is not credible and what evidence suggests the complaints are not

credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be

"sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily

discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing

*Bunnell*, 947 F.2d at 345-46).

The Commissioner superseded Social Security Rule ("SSR") 96-7p governing the assessment of a claimant's "credibility" and replaced it with SSR 16-3p. SSR 16-3p eliminates the reference to "credibility," clarifies that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. SSR 16-3p, *available at* 2016 WL 1119029, at *1-2. The Commissioner recommends that the ALJ examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4. The Commissioner further recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the claimant's location, frequency and duration of symptoms, the impact of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications and treatments used, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and limiting effects of an individual's symptoms; and (3) non-medical source statements, considering how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the file. *See id.* at *6-7.

The ALJ's decision relating to a claimant's subjective testimony may be upheld overall even if not all the ALJ's reasons for rejecting the claimant's testimony are upheld. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004). The ALJ may not, however, discount testimony "solely because" the claimant's symptom testimony "is not substantiated

affirmatively by objective medical evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

The ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record. AR 22.

When, as here, the ALJ determines that Plaintiff's subjective symptom testimony is not fully credible, the ALJ must provide "specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). The ALJ may not "make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill*, 12 F.3d at 918. Although the ALJ does not describe which of Plaintiff's subjective symptom testimony the ALJ is rejecting with ideal clarity, the ALJ does provide sufficient reasons for the Court to infer that the ALJ's reasons are supported by substantial evidence.

The ALJ provided clear and convincing reasons for discounting Plaintiff's complaints of carpal tunnel syndrome because Plaintiff's EMG testing revealed only very mild carpal tunnel, and thus Plaintiff's testimony is inconsistent with the objective medical evidence. AR 22. The ALJ rejected Plaintiff's testimony about bilateral upper extremity pain and pain on her left side because Dr. Adler's testing that showed she had normal strength in all upper body muscle groups. AR 22. Although Dr. Adler recommended that Plaintiff may benefit from an anterior fusion procedure to help with her back pain, Plaintiff never returned to see Dr. Adler or follow up on his recommendations for treating her pain. Similarly, the ALJ found Plaintiff's reported major depressive disorder and posttraumatic stress disorder symptoms not fully credible because

Plaintiff only irregularly pursued counseling at Western Psychological. AR 22. An ALJ "may properly rely on 'unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment.'" *Molina*, 674 F.3d at 1113 (quoting *Tommasetti*, 533 F.3d at 1039). "Moreover, a claimant's failure to assert a good reason for not seeking treatment, 'or a finding by the ALJ that the proffered reason is not believable, can cast doubt on the sincerity of the claimant's pain testimony.'" *Id.* at 1113–14 (9th Cir. 2012) (quoting *Fair*, 885 F.2d at 603). Here, Plaintiff failed to seek treatment repeatedly, despite having the capability to drive herself to appointments. Plaintiff failed to provide any explanation for why she did not follow up with her medical appointments.

The ALJ rejected Plaintiff's claims of a bladder urgency problem because the medical procedure Plaintiff claimed she underwent to treat this problem—having a stent put in—is not reflected anywhere in the medical records. AR 21. Additionally, Plaintiff's complaints of weakness in both hands, resulting in dropping things frequently, was not supported by the objective medical evidence in the EMG testing performed in October 2013. The EMG revealed motor axon loss changes that were subacute and showed no evidence of a right median neuropathy or a right or left ulnar neuropathy. AR 22. Thus, Plaintiff's subjective symptom testimony is inconsistent with the objective medical evidence. The ALJ did not err in finding that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms are not entirely consistent with the medical evidence and other evidence in the record.

### 5. The ALJ's Step Two Analysis

In her reply brief, Plaintiff argues that the ALJ improperly rejected severe impairments at step two of the analysis. Plaintiff argues that the ALJ failed to include Plaintiff's ADD/ADHD, carpal tunnel syndrome, lumbosacral neuritis, obstructive chronic bronchitis and asthma, mixed urinary incontinence, recurrent upper respiratory infections, left eye impairment, left foot pain,

irritable bowel syndrome, and left knee pain as severe impairments. The ALJ considered those impairments and found them to be nonsevere, with the exception of Plaintiff's bronchitis, which the ALJ did find to be severe. The ALJ noted that no abnormalities were found in Plaintiff's bladder and she exhibited no tenderness upon palpitation and no atrophy, and when instructed to return for a follow-up appointment regarding her bladder, she did not do so. AR 18. The ALJ also considered Plaintiff's eye condition was nonsevere because even with the visual disturbance she complained of, her vision was still 20/70 in both eyes. AR 18.

An impairment is severe if it significantly limits an individual's ability to perform basic work activities. Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. Many of the impairments that Plaintiff alleges are severe do not appear on their face to last for a continuous period of 12 months, like Plaintiff's upper respiratory infections and the sore on her foot. Plaintiff specifically argues that her left carpal tunnel syndrome and her ADD/ADHD are severe impairments that would render Plaintiff disabled had the ALJ properly considered them. Although the ALJ did not address these impairments in her step two analysis, the ALJ did consider both of these impairments when considering Plaintiff's subjective symptom testimony and fashioning Plaintiff's RFC. The ALJ found that Plaintiff's carpal tunnel syndrome was not supported by the objective medical evidence and that Plaintiff's ADD/ADHD must not be so severe because Plaintiff did not seek treatment for it. Accordingly, the ALJ did not err in finding that these impairments did not constitute severe impairments at step two.

### 6. Step Five Analysis

Finally, Plaintiff argues that the ALJ's conclusion at step five was flawed because the ALJ presented an incomplete hypothetical to the VE that failed to include all of Plaintiff's limitations. This argument simply restates and compounds the alleged errors in steps one through

five of the ALJ's sequential analysis, and argues that the errors cumulatively infected the ALJ's ultimate step five disability determination. The Court, however, has already concluded that the ALJ did not err in weighing the opinion evidence or Plaintiff's subjective symptom testimony. "In arguing the ALJ's hypothetical was incomplete, [Plaintiff] simply restates her argument that the ALJ's RFC finding did not account for all her limitations because the ALJ improperly discounted her testimony and the testimony of medical experts." As discussed above, the Court found that the ALJ did not err in weighing opinion testimony or Plaintiff's subjective symptom testimony. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175–76 (9th Cir. 2008). Therefore, the hypothetical presented to the VE was not incomplete and the ALJ did not err ate step five by relying on it.

## CONCLUSION

The Commissioner's decision that Plaintiff was not disabled is REVERSED AND REMANDED for further proceedings consistent with this Opinion and Order.

**IT IS SO ORDERED**.

DATED this 7th day of May, 2019.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge